UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| USIAMRIN CHALEUNSAK, ) | |
| ) | |
| Movant, ) | No. 3:07-0416 |
| ) | (Criminal Case No. 3:05-00096) |
| v. ) | JUDGE ECHOLS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

Pending before the Court is Usiamrin Chaleunsak's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Docket Entry No. 1), the Government's Response to the § 2255 motion (Docket Entry No. 7), Movant's Reply (Docket Entry No. 8), the Government's Supplemental Response to the §2255 motion (Docket Entry No. 10), Movant's Reply to the Government's Supplemental Response (Docket Entry No. 11), the Government's Response to Movant's Reply (Docket Entry No. 14), Movant's Reply to the Government's Response (Docket Entry No. 16), and the Government's Amended Supplemental Response to the § 2255 motion (Docket Entry No. 18).

## I. PROCEDURAL HISTORY

Chaleunsak was arrested pursuant to a federal criminal complaint and arrest warrant on May 16, 2005. He was initially indicted by a federal grand jury on May 18, 2005. A superseding indictment was returned on June 29, 2005, charging Chaleunsak with three counts of knowingly and intentionally distributing a quantity of 3,4 Methylenedioxymethamphetamine ("MDMA" or "ecstasy"), a Schedule I controlled substance, within 1,000 feet of a public school and one count of

1

knowingly and intentionally possessing with the intent to distribute a quantity of ecstasy within 1,000 feet of a public school, all in violation of 21 U.S.C. §§ 841(a)(1) & 860. The superseding indictment also charged in one count that Chaleunsak knowingly possessed firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), and included a forfeiture count. Chaleunsak retained Paul Walwyn as his trial counsel.

Some evidence supporting the federal charges was obtained by officers of the Metropolitan Nashville Police Department through execution of a state search warrant at Chaleunsak's residence on May 4, 2005, but in the federal proceedings Chaleunsak did not file a motion to suppress any of that evidence. Chaleunsak and the Government reached a plea agreement, which the Court accepted. During the plea hearing before the Court on September 26, 2005, Chaleunsak entered a guilty plea to all five substantive counts of the superseding indictment and the Court dismissed the forfeiture count on the Government's motion. In the plea agreement, Chaleunsak waived his right to take a direct appeal so long as the sentence imposed was within the maximum of 40 years of incarceration. He also waived his right to file a § 2255 motion on any issues other than the involuntariness of his guilty plea, prosecutorial misconduct, ineffective assistance of counsel, or upward departure at sentencing.

The Court sentenced Chaleunsak on April 20, 2006, to 121 months on each of the drug counts, to run concurrently, and 60 months on the gun count, to run consecutively to the sentences on the drug counts, for a total of 181 months of imprisonment. Additionally, the Court imposed a term of supervised release of six (6) years on the drug counts and three (3) years on the gun count, along with a special assessment of $500.00. Chaleunsak did not file a direct appeal.

2

On April 11, 2007, Chaleunsak filed *pro se* the instant § 2255 motion. He raised the following issues: (1) the Government violated the Interstate Agreement on Detainers Act ("the IAD") when Chaleunsak was not advised that he had the right to request final disposition of the case when the Government took over the prosecution from the state, and counsel rendered ineffective assistance by failing to raise this issue on direct appeal; (2) the guilty plea was not knowing, intelligent, and voluntary because he was not advised at the plea colloquy about all of the rights he was giving up and counsel was ineffective for failing to raise this issue on direct appeal; (3) Chaleunsak is factually innocent of the § 924(c) conviction and counsel was ineffective for failing to object to this conviction; (4) the Court failed to verify at the sentencing hearing that defense counsel read and discussed with Chaleunsak the Addendum to the Presentence Report, counsel failed to file objections to the "924(c) enhancement" and violations of the IAD, and counsel failed to take a direct appeal raising these issues; and (5) investigating agents did not knock and announce when searching Chaleunsak's home and counsel failed to file a motion to suppress raising this issue.

In his Reply to the Government's Supplemental Response (Docket Entry No. 11), Chaleunsak raised two additional grounds for relief: (6) pursuant to Federal Rule of Criminal Procedure 12, Chaleunsak had an individual right under the Second Amendment to keep and bear arms; therefore, the superseding indictment failed to charge an offense and the Court lacked jurisdiction over the unconstitutional § 924(c) charge; and (7) pursuant to Federal Rules of Criminal Procedure 4 and 9, the indictment was not served on Chaleunsak as required in violation of the Fifth and Sixth Amendments. Although Chaleunsak did not seek the Court's permission to amend his §

3

2255 motion to add the last two claims, the Government responded to the claims. Consequently, in the interest of completeness and finality, the Court will address the claims as well.

## II. STANDARDS OF REVIEW

To prevail on a § 2255 motion, Chaleunsak must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, 512 U.S. 339, 348 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993). Claims of trial error must be raised in the trial court and on direct appeal or such claims are procedurally defaulted. See Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000).

To excuse a procedural default, Chaleunsak must show cause for failing to raise the claim prior to the filing of his § 2255 Motion and actual prejudice resulting from the error of which he complains, or he must show his actual innocence of the crime. See id.; Peveler v. United States, 269 F.3d 693, 697 (6th Cir. 2001). Absent such a showing, a procedurally defaulted claim cannot give rise to relief under § 2255. Peveler, 269 F.3d at 698.

To establish ineffective assistance of counsel, Chaleunsak must show that his trial counsel's performance was deficient and that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Chaleunsak must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States,

4

178 F.3d 778, 782 (6th Cir. 1999). A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." Id. A court need not address both parts of the Strickland test if the movant makes an insufficient showing on one. Strickland, 466 U.S. at 697. "Judicial scrutiny of counsel's performance must be highly deferential." Id., at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." The movant is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that he is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). Finally, "when the trial judge also hears the collateral proceedings, as [is] the case here, that judge may rely on his recollections of the trial in ruling on the collateral attack." Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

### III. ANALYSIS

The Court will begin with Chaleunsak's second claim first, as resolution of that claim impacts the analysis of other claims raised.

**A. Whether the guilty plea was knowing, intelligent and voluntary**

The Court held a guilty plea hearing on September 26, 2005. Chaleunsak appeared with his retained counsel, and Chaleunsak was sworn to give under oath his answers to the Court's questions. During the plea colloquy, the Court spoke directly to Chaleunsak and asked him a variety

5

of questions as required by Federal Rule of Criminal Procedure 11. The guilty plea hearing took an hour to complete (Docket Entry No. 21, Minute Entry), and the transcript of the hearing spanned forty (40) pages. (Docket Entry No. 41, Transcript of Plea Hr'g.)

Chaleunsak told the Court he was not under the influence of any substances that would affect his competency to understand and respond to the Court's questions. (Tr. at 37.) He assured the Court that he received a copy of the indictment, he had no questions about the charges against him, he discussed the charges and possible defenses with his counsel, and he had no questions about what the Government would have to prove. (Tr. at 7-10.) Chaleunsak also informed the Court that he was satisfied with the advice of his counsel and he had no complaints about the performance of counsel. (Tr. at 10-11.)

The Court advised Chaleunsak of the maximum statutory penalties he faced on the five counts, including the doubling of the potential maximum sentence of imprisonment under § 860 for drug trafficking within 1,000 feet of a public school and the mandatory, consecutive sentence of five years on the § 924(c) gun charge. Chaleunsak stated he understood the possible maximum penalties, including potential fines, and he had no questions for the Court about the penalties. (Tr. at 11-13.) The Court advised Chaleunsak of the trial rights he would give up by pleading guilty, the impact of pleading guilty to a felony offense, the application of the Sentencing Guidelines, and the requirements of supervised release. (Tr. at 13-28.) Chaleunsak stated that his attorney had discussed the Guidelines with him, he acknowledged that he understood any sentencing estimate provided by his attorney was not a promise or guarantee, and he indicated his understanding that the Court was not bound by the attorney's sentencing estimate. (Tr. at 22-23.) Knowing all of the potential penalties, Chaleunsak told the Court he wanted to plead guilty. (Tr. at 24.)

6

The Court went over the plea agreement with Chaleunsak. (Docket Entry No. 22.) Among other things, the plea agreement provided in paragraph 2 that Chaleunsak had read the charges against him in the superseding indictment, the charges were fully explained to him by his attorney, and he fully understood the nature and elements of the crimes with which he was charged. In paragraph 3, the plea agreement provided that Chaleunsak voluntarily wished to enter a guilty plea to all five substantive counts in return for the Government dismissing the forfeiture count. The potential sentencing penalties were set out in paragraph 4. Chaleunsak admitted the factual basis supporting the plea agreement, which included information about the execution of the search warrant. The recommended calculations under the guidelines to determine a guideline range for sentencing were set forth in paragraph 11. The Court specifically explained the application of the guidelines in arriving at a guideline range for sentencing during the Court's colloquy. In paragraph 26, Chaleunsak gave up his rights to direct appeal and to file a § 2255 motion except on the four limited grounds mentioned earlier. The Court also explained the consequences of such a waiver of his appeal rights. In paragraphs 31 and 32, Chaleunsak agreed that he had read the plea agreement, carefully reviewed it with his attorney, understood its terms, and voluntarily accepted each and every term. He also agreed that he had consulted with his attorney and fully understood his rights. (Id.) In accordance with these written representations in the plea agreement, Chaleunsak told the Court orally at the guilty plea hearing that he had carefully reviewed the plea agreement, he understood it, consulted with his attorney about its provisions, and he had no questions about the plea agreement. (Tr. at 28-36.) Chaleunsak stated the plea agreement represented his entire agreement

with the Government and no one had promised him leniency or put pressure on him in order to force him to plead guilty. (Tr. at 37.)

The Court asked Mr. Walwyn if he had discussed the plea agreement with Chaleunsak, if he believed Chaleunsak was competent to plead guilty voluntarily and to waive his right to a jury trial, and if he had discussed the advantages and disadvantages of a jury trial. Mr. Walwyn responded affirmatively to these questions. The Government attorney also agreed that Chaleunsak was competent to enter a guilty plea. (Tr. at 37-38.) Finally, when asked by the Court, Chaleunsak told the Court that he wanted to plead guilty to the charges because he was, in fact, guilty as charged in the superseding indictment. (Tr. at 38.) In light of the entire plea colloquy, the Court entered its finding that Chaleunsak entered a guilty plea knowingly and voluntarily, and the Court accepted the plea agreement. (Tr. at 39-40.)

In light of this lengthy Rule 11 plea colloquy and Chaleunsak's responses to the Court's questions, the Court can only conclude that Chaleunsak entered his guilty plea to the five counts knowingly, voluntarily, and intelligently. Chaleunsak did not ask the Court any questions, nor did he ask to interrupt the proceedings at any time to obtain clarification on any point from his attorney or from the Court. Chaleunsak informed the Court that he wished to plead guilty to the five counts because he was, in fact, guilty, and he admitted the facts supporting each of the elements of the offenses included in the counts of the superseding indictment. There is no merit to Chaleunsak's current claim that his guilty plea was entered involuntarily. This issue will be rejected.

## B. Alleged violation of the IAD

Chaleunsak contends that the Government violated the IAD when Chaleunsak was not advised that he had the right to request final disposition of the case when the Government took over

8

the prosecution from the state, and counsel rendered ineffective assistance by failing to raise this issue on direct appeal.

The rights created under the IAD are nonjurisdictional and waivable. See Kowalak v. United States, 645 F.2d 534, 536-537 (6th Cir. 1981). Chaleunsak waived the IAD issue by entering his knowing and voluntary guilty plea to the five counts of the superseding indictment before raising any issue about the applicability of the IAD. Therefore, the Court will not address the merits of this issue.

Chaleunsak further claims his trial counsel rendered ineffective assistance by failing to raise an IAD issue on direct appeal. By virtue of his plea agreement, Chaleunsak waived any right to take a direct appeal unless the sentence imposed exceeded the maximum statutory sentence. Thus, even if counsel had taken a direct appeal and raised the IAD issue, the appellate court undoubtedly would have rejected the appeal as barred by the waiver clause in the plea agreement that Chaleunsak voluntarily executed. See United States v. Smith, 344 F.3d 479, 483 (6th Cir. 2003); United States v. Keesee, 2008 WL 1820784 at *1 (6th Cir. April 23, 2008). Chaleunsak cannot show that his counsel performed deficiently in failing to raise the IAD issue on direct appeal, nor has Chaleunsak provided any facts to show how he was prejudiced by the failure of his counsel to raise an issue under the IAD. This claim will be rejected as without merit.

**C. Factual innocence of the § 924(c) charge**

Chaleunsak claims that he did not use or carry a firearm during and in relation to a drug trafficking crime and therefore, he is factually innocent of the firearm charge. This claim is barred by the waiver contained in Chaleunsak's plea agreement and by the guilty plea itself. See United

9

States v. Pickett, 941 F.2d 411, 416-417 (6th Cir. 1991) (holding guilty plea waives non-jurisdictional issues).

Even if the Court were to consider the claim, it lacks merit. The superseding indictment did not charge Chaleunsak with using or carrying a firearm. Rather, the indictment charged Chaleunsak with knowingly possessing firearms in furtherance of drug trafficking activity. This is a different crime than using or carrying a firearm during and in relation to a drug trafficking crime. United States v. Combs, 369 F.3d 925, 932 (6th Cir. 2004). Chaleunsak entered a knowing and voluntary guilty plea admitting that he possessed numerous firearms and ammunition in the same bedroom where 5,526 ecstasy pills and other drug trafficking paraphernalia were found. He admitted that these firearms were possessed in furtherance of his drug trafficking activity. Chaleunsak is not factually innocent of the § 924(c) charge contained in the superseding indictment. As a result, trial counsel did not render ineffective assistance in failing to object to the § 924(c) enhanced sentence at the sentencing hearing or in failing to raise this issue on direct appeal, a right which Chaleunsak waived. The issues surrounding the claim of factual innocence of the firearm charge are rejected as without merit.

**D. Addendum to Presentence Report**

Chaleunsak next claims that the Court failed to verify at the sentencing hearing that defense counsel read and discussed with Chaleunsak the Addendum to the Presentence Report. The Government initially conceded error on this point and asked for re-sentencing. Later the Government changed its position and asked that the issue be rejected.

At the sentencing hearing, the Court asked if the lawyers agreed that they had received the Presentence Report more than 35 days before the sentencing hearing and the lawyers stated that they

10

had. (Docket Entry No. 42, Sentencing Tr. at 2.) The Court did not expressly ask Chaleunsak if he and his lawyer had discussed the Addendum to the Presentence Report in accordance with Federal Rule of Criminal Procedure 32(i)(1)(A).

Chaleunsak may not now raise in this § 2255 motion the Court's failure to follow Rule 32 strictly. Ordinarily this type of issue would be raised on direct appeal. However, Chaleunsak waived his right to take a direct appeal to challenge this kind of trial court error. See United States v. Washington, 83 Fed. Appx. 110, 2003 WL 22976597 at *1 (6th Cir. Dec. 5, 2003) (rejecting Rule 32 claim in light of appellate waiver in plea agreement). Chaleunsak also waived his right to raise this claim in the instant § 2255 motion, but even if the Court were to consider the claim, it is without merit. The parties and the Court addressed the Presentence Report and the Addendum thoroughly at the sentencing hearing and Chaleunsak had an opportunity to address the Court in writing before the sentencing and to address the Court orally at the sentencing to make his sentencing positions known. Chaleunsak also was granted the right of allocution to speak to the Court directly before sentence was entered, and at no time during the sentencing hearing did Chaleunsak alert the Court that the Court's technical violation of Rule 32 caused him any harm. This claim is denied.

**E. Failure of police officers to "knock and announce"**

Chaleunsak next argues that Metropolitan Nashville police officers did not "knock and announce" before entering his home with a battering ram and his counsel rendered ineffective assistance by failing to file a motion to suppress the evidence seized in the execution of the search warrant. The Government provides an affidavit of Detective Michael Galluzzi, who attests that the search warrant was executed at 7:15 a.m. when officers knocked and announced their presence in Laotian and stated they had a search warrant. After waiting a reasonable amount of time and there

11

being no answer, officers hit the door with a ram and made entry. (Docket Entry No. 10-5, Galluzzi Affidavit.) Chaleunsak denies that the facts are as stated by Detective Galluzzi.

This issue could have been litigated before Chaleunsak entered a guilty plea, but he waived the right to raise the "knock and announce" issue by pleading guilty and by waiving his right to take a direct appeal in the plea agreement. Chaleunsak reserved the right to claim ineffective assistance of counsel in a § 2255 motion, but the Court concludes he has not shown any ineffectiveness in counsel's failure to file a motion to suppress. Even assuming that counsel performed deficiently by failing to file a motion to suppress, Chaleunsak has not shown prejudice. See Strickland, 466 U.S. at 687. A violation of the "knock and announce" rule does not require application of the exclusionary rule to suppress the evidence found pursuant to a valid search warrant, Hudson v. Michigan, 547 U.S. 586, 591 (2006), and here Chaleunsak does not contend that the search warrant was invalid. Therefore, because he cannot show prejudice, he cannot prevail on his ineffective assistance claim.

### F. Second Amendment claim

Next, Chaleunsak contends that the § 924(c) charge was unconstitutional because he had a Second Amendment right to keep and bear arms. This claim is barred by the appellate waiver contained in the plea agreement. Even if the claim is not barred, the Sixth Circuit rejected the same contention in United States v. Helton, 86 Fed.Appx. 889, 892 (6th Cir. 2004) (holding § 924(c) constitutes reasonable limitation on defendant's Second Amendment rights). Consequently, this claim will also be denied as without merit.

### G. Service of the indictment

Finally, Chaleunsak claims that the Court lacked jurisdiction under Federal Rules of Criminal Procedure 4 and 9 because the indictment was not served on him as required. Chaleunsak does not specify whether he is referring to the original indictment or the superseding indictment.

Again, this issue is barred by the waiver of direct appeal rights to which Chaleunsak consented in his plea agreement. Even if the Court were to consider the merits of the claim, the record belies Chaleunsak's suggestion that he did not receive a copy of the original or the superseding indictments. The transcript of the detention hearing reveals that Chaleunsak and his counsel received a copy of the indictment. (Docket Entry No. 46.) At the guilty plea hearing, Chaleunsak assured the Court directly that he had received and reviewed a copy of the superseding indictment. Thus, this issue also is without merit.

### IV. CONCLUSION

For all of the reasons stated, Usiamrin Chaleunsak's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence will be denied. Because the record shows conclusively that Chaleunsak is not entitled to relief, an evidentiary hearing is not warranted on any issue. See Green, 65 F.3d at 548.

An appropriate will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

13